SEALED

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____25cv25796_____

**FILED BY____ KP ____D.C.**

**DEC 08 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**(Filed Under Seal Pursuant to S.D. Fla. L.R. 5.4)**

**(JURY TRIAL DEMANDED)**

**YSIDRA LOPENZA**

(Proceeding under **pseudonym "ANA MENDEZ"** pending ruling on incorporated

Motion *in limine*),

Individually, and alternatively as a Placeholder Representative for the Putative

Class contingent upon Appointment of Counsel,

Plaintiff,

v.

**PETRÓLEOS DE VENEZUELA, S.A. ("PDVSA");**

**Junta Administradora ad hoc de Petroleos de Venezuela , known as**

**"PDVSA AD HOC BOARD"; and**

**CITGO PETROLEUM CORPORATION,**

Defendants.

_____/

**PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND IMPOSITION OF CONSTRUCTIVE TRUST;**

**INCORPORATED MOTION IN LIMINE TO PROCEED BY PSEUDONYM;**

**INCORPORATED NOTICE OF FOREIGN LAW (FED. R. CIV. P. 44.1); AND**

**ALTERNATIVE CLASS ACTION ALLEGATIONS**

**(Contingent upon Appointment of Class Counsel)**

**COMES NOW**, the Plaintiff, **YSIDRA LOPENZA** (proceeding as **ANA MENDEZ**), acting *Pro Se* in her individual capacity but petitioning for the appointment of counsel to protect the rights of the Class, and files this Verified Complaint against Defendants **PDVSA, PDVSA AD HOC BOARD**, and **CITGO PETROLEUM CORPORATION**, alleging as follows:

**I. PRELIMINARY MOTION *IN LIMINE* TO PROCEED BY PSEUDONYM**

**Relief Requested:** Plaintiff moves this Court for an Order permitting her to proceed under the pseudonym **"ANA MENDEZ"** and to temporarily **SEAL** her true identity in all public docket entries.

**Memorandum of Law:**

- **Legal Standard:** The Eleventh Circuit permits anonymity where a plaintiff has a "substantial privacy right which outweighs the customary presumption of openness." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011).

- **Imminent Danger:** Plaintiff alleges "Crimes Against Humanity" by a foreign state. Her family resides in Venezuela, within reach of the regime's security forces (SEBIN). *See Exhibit A* *(Evidence of the "Delaware Leak" (D. Del.): Documentation showing the unauthorized release of sealed whistleblower identities in Freites v. Venezuela, supporting the Motion to Proceed by Pseudonym due to imminent danger)*

- **The "Delaware Leak" Precedent:** In *Freites C. v. Petroleos De Venezuela, S.A.*, *1:23-cv-00989 (D. Del.)*, sensitive whistleblower identities were leaked by defense agents, resulting in threats to families. This objective "doxing" satisfies the "danger of physical harm" factor established in *Plaintiff B*. *See Exhibit A*

## II. JUDICIAL NOTICE OF FOREIGN LAW (FED. R. CIV. P. 44.1)

**Notice:** Plaintiff gives notice of intent to rely on the law of the Bolivarian Republic of Venezuela.

**Conflict of Laws (The *Bishop* Test):** Under Florida's "Most Significant Relationship" test (*Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999 (Fla.

1980)), Venezuelan substantive law governs the property rights because the injury (non-payment of severance) occurred in Venezuela and involves a Venezuelan public policy interest.

**Substantive Law Asserted:**

- Organic Labor Law (LOT 1997), Art. 108: Vests severance benefits (*Fideicomiso*) as the worker's private property, held in trust.

- Organic Labor Law (LOT 1997), Art. 125 ("The Double"): Mandates "Double Indemnification" (*Doblete*) for unjustified dismissal.

- Organic Labor Law (LOT 1997), Art. 158: Establishes the "Super-Priority" (*Privilegio*) of labor debts over all other corporate debts.

- Civil Code, Art. 1185 (Abuse of Right): Imposes liability for acts performed with intent to harm (*Abuso de Derecho*).

## III. JURISDICTION AND VENUE

**Subject Matter Jurisdiction:**

- **FSIA (28 U.S.C. § 1605(a)(3) - Expropriation):** Defendants confiscated

vested property (LOT 1997 Trust Funds and Severance Payments) in violation of international law. The "property exchanged" (CITGO equity) is present in the U.S *See Exhibit B Evidence of Pension Fund Diversion (U.S. v. Illarramendi)*

- **FSIA (28 U.S.C. § 1605(a)(2) - Commercial Activity):** The theft caused a "Direct Effect" in the U.S. via the **Illarramendi Ponzi Scheme**, which laundered the stolen pension funds and severance payments through U.S. banks in Connecticut and Florida (*U.S. v. Illarramendi*, D. Conn.). *See Exhibit B*

- **Alien Tort Statute (28 U.S.C. § 1350):** For "Transnational Repression" and "Persecution" committed by CITGO on U.S. soil.

**Venue:** Proper in the **Southern District of Florida** under 28 U.S.C. § 1391(f)(3). The **PDVSA AD HOC BOARD**, the agency controlling the foreign state's assets, maintains its headquarters and directs legal operations from Miami, Florida.

## IV. FACTUAL ALLEGATIONS

A. The Purge and "Civil Death"

In 2002–2003, Defendants fired 18,000 employees. To prevent re-employment, the State implemented the "Tascón List," a digitized apartheid system violating the Right to Work (Const. Art. 87)18181818. This constituted "Civil Death".

B. CITGO's "Beachhead" and Transnational Repression

During 2002 and 2003, CITGO executives established a command post at the Hotel Eurobuilding in Caracas to coordinate the purge.

- **The Trap:** In 2002 and 2003, CITGO forcibly repatriated employees legally present in the U.S. (Houston/Lake Charles) by threatening visa revocation, knowing they would face persecution. This act of aiding persecution occurred within the United States.

C. The Theft of the "Nest Egg" (Illarramendi & Rivera)

Under LOT 1997 Art. 108, the Severance Trust was Plaintiff's private property. Defendants looted this Trust. Forensic evidence confirms hundreds of millions were diverted to the Illarramendi Ponzi Scheme and used to fund political lobbying, including a $50 million contract with David Rivera's Interamerican Consulting to lobby U.S. officials.

D. The "Stark Finding" and Ad Hoc Board Liability

In OI *European Group B.V. v. Bolivarian Republic of Venezuela (D. Del. 2023)*, Judge

Stark found that the PDVSA Ad Hoc Board exercises "extensive direction and control" over PDVSA in the U.S., sustaining the "Alter Ego" relationship. Under the doctrine of Continuity of the State and the Transition Statute (Estatuto de la Transición) Art. 34 - the legal frame of the Venezuelan authorities officially recognized by the US - , the Ad Hoc Board cannot inherit PDVSA's assets (CITGO) while repudiating its labor liabilities *(Red Tree Investments v. PDVSA)*.

## V. CAUSES OF ACTION

### COUNT I

### VIOLATION OF PROPERTY RIGHTS (PRESTACIONES SOCIALES) & BREACH OF FIDUCIARY DUTY

(Applying Venezuelan Law via Fed. R. Civ. P. 44.1)

Against PDVSA and PDVSA Ad Hoc Board

Plaintiff realleges Paragraphs 1-14.

- **Venezuelan Law Analysis:** Pursuant to Art. 92 of the Constitution and Art. 108 of LOT 1997, Plaintiff's severance benefits are vested property or "Acquired Rights" *(Derechos Adquiridos)* which accrue immediately upon service. Furthermore, these funds are to be held in a statutory trust *(Fideicomiso)*.

- **Legal Argument:** The refusal to pay is not a commercial default; it is a

confiscation of the *corpus* of a trust. Under the FSIA Expropriation Exception, this constitutes a "taking" of property in violation of international law because it was discriminatory (political retaliation) and without compensation.

- **U.S. Parallel:** This mirrors a claim for Conversion or Civil Theft of trust assets. The Ad Hoc Board's refusal to release these funds constitutes a "Ratification of Expropriation".

**COUNT II**

**STATUTORY PENALTY FOR UNJUSTIFIED DISMISSAL ("DOBLETE")**

(Applying Venezuelan Law via Fed. R. Civ. P. 44.1)

Against PDVSA and PDVSA Ad Hoc Board

Plaintiff was terminated without "Just Cause". Pursuant to Art. 125 of LOT 1997, Defendants are liable for the "Double Indemnity" (*Doblete*).

- **Legal Argument:** This liability is strict. The mass firing was a political purge, devoid of "Just Cause" or due process. Therefore, the debt is liquidated by operation of law.

- **U.S. Parallel:** This functions as a Statutory Penalty or Liquidated Damages clause in an employment contract.

## COUNT III

**ABUSE OF RIGHT (ABUSO DE DERECHO)**

(Applying Venezuelan Civil Code Art. 1185)

Against All Defendants

Under Art. 1185 of the Venezuelan Civil Code, a party is liable for damages caused by the exercise of a right in bad faith.

- **Legal Argument:** Even if Defendants possessed a right to fire, they abused it by implementing the "Tascón List" and "Civil Death" strategy to destroy the Plaintiff's "life project" (*proyecto de vida*).

- **U.S. Parallel:** This aligns with Intentional Infliction of Emotional Distress (IIED). The systematic persecution and the recent "Delaware Leak" ("doxing") constitute extreme and outrageous conduct.

## COUNT IV

**CIVIL THEFT AND CONVERSION (The Illarramendi Diversion)**

(Supplemental Jurisdiction / Florida Law)

Against All Defendants

Defendants exercised unlawful dominion over Plaintiff's Pension Trust (*Fideicomiso*), diverting it into the U.S. financial system (Illarramendi Scheme/Rivera Contract).

- **Legal Argument:** Under Florida Statutes (Civil Theft) and common law Conversion, Plaintiff must show "criminal intent." The diversion of these funds into the Illarramendi Ponzi Scheme and the David Rivera Lobbying Contract demonstrates felonious intent to use trust assets for political money laundering and criminal enterprise.

- **Alter Ego Liability:** CITGO is liable because its assets were commingled with these stolen funds to fund the Rivera contract, establishing it as a beneficiary of the theft.

**COUNT V**

## ALIEN TORT STATUTE - AIDING AND ABETTING PERSECUTION

### Against CITGO

CITGO violated the Law of Nations by aiding the persecution of the "Meritocracy". CITGO committed affirmative acts in the U.S. (repatriation orders and systematic denial of access to work for CITGO in the US and its subsidiaries) to facilitate this persecution. CITGO systematically denied employment in the United States to those in the Lista Tascon or fired by PDVSA in 2003/2003 for political reasons. This is tantamount to persecution executed by CITGO itself, in U.S. soil, in addition to the unlawful operations in Venezuela with the purpose of supporting the PDVSA persecution.

## COUNT VI

## DECLARATORY JUDGMENT: CONSTRUCTIVE TRUST & UNJUST ENRICHMENT

(Based on the "Super-Priority" of Article 158 LOT 1997)

### Against All Defendants

- **Legal Basis:** Under Article 158 of the LOT 1997, labor debts enjoy a "Privilege" (*Privilegio*) super-priority over all other debts.

- **Constructive Trust:** The funds used to maintain CITGO and defend the Ad Hoc Board were derived from the misappropriation of the Workers' Pension Trust.

- **Unjust Enrichment:** Defendants have been unjustly enriched by retaining the liquidity that rightfully belonged to the Plaintiff.

- **Remedy:** Plaintiff seeks a declaration that a Constructive Trust exists over CITGO's assets in an amount equal to the stolen Pension Funds (estimated at over **$14 Billion** for the Class), and that these assets cannot be liquidated to satisfy general commercial creditors (e.g., Crystallex) until the "Super-Priority" labor debt is satisfied. *Collinson v. Miller*, 903 So. 2d 221 (Fla. 2d DCA 2005).

## VI. ALTERNATIVE CLASS ACTION ALLEGATIONS

**(Contingent on Appointment of Counsel)**

**Alternative Pleading:** Plaintiff pleads this section pursuant to Fed. R. Civ. P. 8(d)(2) and Rule 23 as a "Placeholder" to toll the statute of limitations. Plaintiff acknowledges she cannot serve as Class Representative *pro se* (*Massimo v. Upjohn*).

**Class Definition:** "All former PDVSA employees terminated between Dec. 2002 and March 2003 who have not received their vested LOT 1997 Severance/Pension funds".

**Rule 23 Requirements:** The Class meets Numerosity (>18,000), Commonality (Universal Purge/Theft), and Typicality.

**Motion for Appointment of Counsel:** Plaintiff moves pursuant to 28 U.S.C. § 1915(e)(1) for the appointment of counsel based on "Exceptional Circumstances" (*Bass v. Perrin*).

- **Complexity:** The case involves FSIA, ATS, *Bancec* Alter Ego, and foreign law conflicts.

- **Danger:** The "Delaware Leak" proves that proceeding *pro se* endangers the Plaintiff's life.

- **Class Necessity:** A *pro se* litigant cannot represent a class (*Massimo v. Upjohn*).

**Request:** Plaintiff requests the Court **STAY** any motion to strike this Count until it rules on the accompanying Motion for Appointment of Class Counsel.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff **YSIDRA LOPENZA** (filing as **ANA MENDEZ**) demands a **JURY TRIAL** and requests this Court:

A. GRANT the Motion In Limine to Proceed by Pseudonym;

B. TAKE JUDICIAL NOTICE of Venezuelan Law (LOT 1997, Arts. 108, 125, 158);

C. APPOINT Class Counsel pursuant to "Exceptional Circumstances";

D. DECLARE that a Constructive Trust exists over the assets of PDVSA/CITGO in the U.S. to satisfy the "Super-Priority" labor debts;

E. ENJOIN the Ad Hoc Board from dissipating assets subject to this Trust;

F. ENTER JUDGMENT for Plaintiff for:

1. Unpaid Prestaciones Sociales (Art. 108 LOT);

2. "Double Indemnity" Penalty (Art. 125 LOT);

3. Compensatory and Punitive Damages for Civil Theft, *Daño Moral* and Persecution.

DATED: December 3, 2025

Respectfully submitted,

/s/ Ysidra Lopenza

2240 Valley Creek Drive,

Lithia Springs, GA 30122

(Filing as ANA MENDEZ)

Pro Se Plaintiff

**VERIFICATION**

I, YSIDRA LOPENZA, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 3, 2025.

/s/ Ysidra Lopenza