

**Sealed**



FILED BY _____ D.C.

JAN 21 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-25796-Shaw-Wilder

ANA MENDEZ,

> *Plaintiff,*

v.

PETRÓLEOS DE VENEZUELA, S.A., *et al.,*

> *Defendants.*

**FILED UNDER SEAL**

---

## DEFENDANT CITGO PETROLEUM CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AND IN THE ALTERNATIVE TO STAY

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

LEGAL STANDARD ..................................................................................................................... 4

ARGUMENT................................................................................................................................... 5

     I.      The Complaint Must Be Dismissed. ........................................................................ 5

           A.     Plaintiff Fails to State a Claim Against CITGO for "Abuse of Right.".......5

           B.     Plaintiff's Claim for Civil Theft and Against CITGO Is Inadequately
                  Pled and Barred by the Statute of Limitations. ............................................ 6

           C.     Plaintiff's Claim Under the Alien Tort Statute ("ATS") Must Be
                  Dismissed. ................................................................................................... 10

                 1.       The Court Lacks Jurisdiction Over Plaintiff's ATS Claim. .......... 10

                 2.       Plaintiff Does Not Adequately Allege Aiding and Abetting
                        Liability Against CITGO. ............................................................. 13

                 3.       Plaintiff's ATS Claim Is Time-Barred.......................................... 15

           D.     Plaintiff's Claim for Constructive Trust and Unjust Enrichment Is
                  Inadequately Pled and Barred by the Statute of Limitations. .................... 16

     II.     Alternatively, the Court Should Stay the Case Until After PDVSA Has Been
           Served and Its Sovereign Immunity Objections Resolved. ................................. 18

CONCLUSION.............................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Almeida v. Amazon.com, Inc.,*
   456 F.3d 1316 (11th Cir. 2006) .................................................................................................. 8

*Arce v. Garcia,*
   400 F.3d 1340 (11th Cir. 2005),
   *vacated on other grounds,* 434 F.3d 1254 (11th Cir. 2006) ........................................................ 15

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................................... 4, 6, 13, 15

*Baloco v. Drummond Co.,*
   767 F.3d 1229 (11th Cir. 2014) ....................................................................................... 10, 11, 12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................................................... 4

*Bove v. PBW Stock Exch., Inc.,*
   382 So. 2d 450 (Fla. 2d DCA 1980) ........................................................................................... 9

*Brand v. Old Republic Nat'l Title Ins.,*
   797 So. 2d 643 (Fla. 3d DCA 2001) ........................................................................................... 9

*Brecka v. Individuals, Entities, & Unincorporated Associations,*
   No. 24-CV-61645, 2025 WL 1151120 (S.D. Fla. Apr. 1, 2025), *report and*
   *recommendation adopted,* No. 24-61645-CIV, 2025 WL 1148442 (S.D. Fla. Apr. 17,
   2025) ........................................................................................................................................... 3

*Brown v. Regan,*
   368 So.3d 3 (Fla. 4th DCA 2023) ............................................................................................. 16

*Cabello v. Fernandez-Larias,*
   402 F.3d 1148 (11th Cir. 2005) ........................................................................................... 13, 15

*Cardona v. Chiquita Brands Int'l,*
   760 F.3d 1185 (11th Cir. 2014) ................................................................................................. 12

*Century Sr. Servs. v. Consumer Health Ben. Ass'n,*
   770 F. Supp. 2d 1261 (S.D. Fla. 2011) ...................................................................................... 17

*De Wit v. KLM Royal Dutch Airlines,*
   570 F. Supp. 613 (S.D.N.Y. 1983) ............................................................................................ 12

*Doe v. Drummond Co.,*
   782 F.3d 576 (11th Cir. 2015) ......................................................................................... 10, 12, 13

*Dole Food Co. v. Patrickson,*
  538 U.S. 468 (2003)...........................................................................................................8

*Flatirons Bank v. Alan W. Steinberg Ltd.,*
  233 So. 3d 1207 (Fla. 3d DCA 2017) ..................................................................... 17, 18

*Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.,*
  377 F.3d 1164 (11th Cir. 2004) ........................................................................................5

*Freites v. CITGO Holding, Inc.,*
  No. 23-cv-00989-JLH, 2025 WL 3654006 (D. Del. Dec. 17, 2025) .................................2

*Freites v. Medina,*
  No. 25-cv-20465-BLOOM/Elfenbein, 2025 WL 1425491 (S.D. Fla. May 16, 2025),
  *appeal dismissed,* No. 25-12067-E, 2025 WL 2638566 (11th Cir. Aug. 27, 2025)....................2

*Garrett v. PDV Holding, Inc.,*
  No. 24-cv-00380-JLH, 2025 WL 3654005 (D. Del. Dec. 17, 2025) .................................2

*HealthPrime, Inc. v. Smith/Packett/Med-Com, LLC,*
  428 F. App'x 937 (11th Cir. 2011) ...................................................................................9

*Howe v. City of Enterprise,*
  861 F.3d 1300 (11th Cir. 2017) .....................................................................................19

*Huff Groves Tr. v. Caulkins Indiantown Citrus Co.,*
  829 So. 2d 923 (Fla. 4th DCA 2002) ...............................................................................9

*IberiaBank v. Coconut 41, LLC,*
  984 F. Supp. 2d 1283 (M.D. Fla. 2013), *aff'd,* 589 F. App'x 479 (11th Cir. 2014)....................7

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Deriv. Litig.,*
  190 F. Supp. 3d 1100 (S.D. Fla. 2016)...........................................................................14

*Jesner v. Arab Bank, PLC,*
  584 U.S. 241 (2018)....................................................................................................11, 12

*Johnson v. Bd. of Regents,*
  263 F.3d 1234 (11th Cir. 2001).........................................................................................5

*Kinnett Dairies, Inc. v. J. C. Farrow,*
  580 F.2d 1260 (5th Cir. 1978)...........................................................................................3

*Kiobel v. Royal Dutch Petrol. Co.,*
  569 U.S. 108 (2013)........................................................................................................10

*Koski v. Carrier Corp.,*
  347 F. Supp. 3d 1185 (S.D. Fla. 2017)...........................................................................18

iii

*Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*,
  No. 3:15-CV-849-J-34PDB, 2017 WL 5256870 (M.D. Fla. Nov. 13, 2017) ........................ 5, 19

*LS Energia Inc. v. Corporacion Electrica Nacional S.A.*,
  No. 21-21642-CV, 2023 WL 7490778 (S.D. Fla. Mar. 21, 2023) ................................................ 19

*Marrache v. Bacardi U.S.A., Inc.*,
  17 F.4th 1084 (11th Cir. 2021) ................................................................................................ 16, 17

*McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*,
  501 F.3d 1244 (11th Cir. 2007) ...................................................................................................... 4

*Mendonca v. Tidewater, Inc.*,
  159 F. Supp. 2d 299 (E.D. La. 2001) .......................................................................................... 12

*OJ Com., LLC v. Ashley Furniture Indus.*,
  817 F. App'x 686 (11th Cir. 2020) .............................................................................................. 17

*Oliver v. Roquet*,
  858 F.3d 180 (3d Cir. 2017) ........................................................................................................... 8

*Penaloza v. Drummond Co.*,
  662 F. App'x 673 (11th Cir. 2016) .............................................................................................. 10

*Ramos v. United States*,
  No. 01-14019-CR, 2009 WL 10711701 (S.D. Fla. Aug. 5, 2009) ................................................ 3

*Romero v. Drummond Co.*,
  552 F.3d 1303 (11th Cir. 2008) .................................................................................................... 10

*SA Palm Beach, LLC v. Certain Underwriters at Lloyd's Lond.*,
  32 F.4th 1347 (11th Cir. 2022) ...................................................................................................... 6

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) ................................................................................................................ 10, 11

*Thole v. U. S. Bank N.A*,
  590 U.S. 538 (2020) ........................................................................................................................ 7

*United Techs. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2009) ...................................................................................................... 7

*Univ. of S. Ala. v. Am. Tobacco Co.*,
  168 F.3d 405 (11th Cir. 1999) ........................................................................................................ 4

*Wildhaber v. EFV*,
  No. 17-CV-62542, 2018 WL 3069264 (S.D. Fla. June 21, 2018),
  *aff'd*, 745 F. App'x 141 (11th Cir. 2018) ..................................................................................... 15

*Willis v. Royal Caribbean Cruises, Ltd.,*
  77 F.4th 1332, 1337 (11th Cir. 2023)..................................................................................... 6

**Statutes**

28 U.S.C. § 1350.............................................................................................................. passim

28 U.S.C. § 1602, *et seq.*........................................................................................... 1, 2, 18, 19

Fla. Stat. § 772.11 ...................................................................................................................... 7

Fla. Stat. § 772.17 ...................................................................................................................... 9

Fla. Stat. § 812.014 .................................................................................................................... 7

Fla. Stat. § 95.031(1).................................................................................................................. 9

Fla. Stat. § 95.11 ...................................................................................................................... 18

Fla. Stat. § 95.11(3)(b) ............................................................................................................... 9

Venezuelan Civil Code Art. 1185............................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 1, 4

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 1, 4

Fed. R. Civ. P. 4(d)(3)................................................................................................................ 4

Fed. R. Civ. P. 44.1................................................................................................................... 19

**Other Authorities**

Carlos Dominguez Hernandez & Yulena Sanchez-Hoet, *Venezuela, in* GETTING THE DEAL
  THROUGH – DISPUTE RESOLUTION 2006, at 1 (2006)................................................................. 5

Defendant CITGO Petroleum Corporation ("CITGO") respectfully moves to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and, in part, under Rule 12(b)(1) for lack of subject matter jurisdiction. In the alternative, CITGO moves to stay this case until after Defendant Petróleos de Venezuela, S.A. ("PDVSA") has been properly served with process under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391, 1441, 1602–11, and any sovereign immunity-based objections to this Court's jurisdiction have been resolved.

## INTRODUCTION

For several years, groups of former employees of the Venezuelan state-owned oil company PDVSA fired between 2002 and 2003 have repeatedly tried and failed to assert claims against CITGO for injuries caused by the Chavez regime and the recently deposed dictator Nicolás Maduro. Having recently struck out in other courts, these groups are now trying their luck here, with a new pro se Plaintiff and new frivolous theories for imposing liability on CITGO under Venezuelan law, Florida law, and the Alien Tort Statute ("ATS"), even though CITGO had no role in the alleged harms. These new theories fare no better than the old ones.

The Complaint contains no well-pleaded facts plausibly connecting CITGO, a U.S. petroleum refiner and marketer headquartered in Texas, to any of the alleged wrongdoing. Instead, Plaintiff relies on conclusory assertions and theories of liability that are legally defective, time-barred, or (as to the claim under the ATS) outside this Court's jurisdiction. Because the Complaint fails to state a claim upon which relief can be granted—and because amendment would be futile—the Complaint should be dismissed with prejudice. In the alternative, Plaintiff's claims against CITGO are inextricably intertwined with her claims against PDVSA, which has not yet been served, and this case should not, and cannot practically, proceed until PDVSA has been

1

properly served under the FSIA and its inevitable sovereign immunity-related objections have been resolved.

## BACKGROUND

This is the latest in a series of actions brought by pro se litigants associated with Venezuelan labor activists Ivan Freites and Leroy Garrett related to the firing and alleged persecution of former PDVSA employees by the Chavez and Maduro regimes in Venezuela. The United States District Court for the District of Delaware recently dismissed complaints filed by Freites and Garrett that alleged claims against PDVSA and CITGO affiliates similar to those brought here. *See Garrett v. PDV Holding, Inc.*, No. 24-cv-00380-JLH, 2025 WL 3654005, at \*3 (D. Del. Dec. 17, 2025) (dismissing for failure to state a claim and opining that "further amendment appears to be futile" but allowing plaintiff to request leave to amend to attempt to cure deficiencies); *Freites v. CITGO Holding, Inc.*, No. 23-cv-00989-JLH, 2025 WL 3654006, at \*5 (D. Del. Dec. 17, 2025) (same). In addition, courts in this District have dismissed two actions filed by Freites, finding in one such action that Freites and his associates committed fraud upon the Court by forging the signatures of pro se plaintiffs. *Freites v. Medina*, No. 25-cv-20465-BLOOM/Elfenbein, 2025 WL 1425491 (S.D. Fla. May 16, 2025), *appeal dismissed*, No. 25-12067-E, 2025 WL 2638566 (11th Cir. Aug. 27, 2025) (dismissing federal claims with prejudice and declining to exercise supplemental jurisdiction over state-law claims); *Freites v. Viera-Blanco*, No. 1:24-cv-24176-CMA (S.D. Fla. Jan. 28, 2025), ECF 67 (dismissing claims without prejudice for committing fraud upon the Court but allowing plaintiffs to re-file individually as *pro se* litigants, which never occurred).

Plaintiff Ana Mendez (a pseudonym) is the corporate secretary of Petroamigos de Venezuela ("Petroamigos"), a group of former employees of the Venezuelan state-owned oil company PDVSA. *See* Letter Response in Opp. to Dr. Leroy A. Garrett's Mot. to Intervene at 1, *Petroleos*

*de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 1:19-cv-10023 (S.D.N.Y. Oct. 24, 2025), ECF 405; Declaration of Daniel D. Birk ("Birk Decl.") Ex. A at 1.[1] Petroamigos previously was associated with Leroy Garrett, whose own pro se suit was purportedly brought on behalf of Petroamigos. *See* First Amended Compl. at 4, *Garrett v. Petroleos de Venezuela, S.A.*, No. 1:24-cv-00380-JLH (D. Del. Sep. 22, 2025), ECF 44. The group ended its association with Garrett on October 1, 2025. *See* Petroamigos Resolution of Oct. 1, 2025, at 1, *Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 1:19-cv-10023 (S.D.N.Y. Oct. 24, 2025), ECF 405-1; Petroamigos Resolution of Oct. 6, 2025, at 1, *id.*, ECF 405-3. On or about October 29, 2025, Petroamigos began associating with Ivan Freites. Birk Decl. Ex. B at 2. Plaintiff filed this action under seal in December 2025 against PDVSA, the board of directors governing PDVSA in the United States (the "Ad Hoc Board"), and CITGO, a leading U.S. refiner and an indirect subsidiary of PDVSA. Though proceeding *pro se*, Plaintiff seeks to represent a putative class of former PDVSA employees whose employment was terminated between December 2002 and March 2003.[2]

Plaintiff alleges that she and the putative class were terminated "without 'Just Cause'" and that PDVSA refused to pay them severance benefits, which the Complaint characterizes as a "'taking' of property in violation of international law." Compl. at 7–8. Further, "to prevent re-employment," the Venezuelan government implemented a digital blacklist of the terminated employees.

---

[1] A court may "take judicial notice of related proceedings and records in cases before that court." *Ramos v. United States*, No. 01-14019-CR, 2009 WL 10711701, at *4 n.9 (S.D. Fla. Aug. 5, 2009) (quoting *Kinnett Dairies, Inc. v. J. C. Farrow*, 580 F.2d 1260, 1277 n.33 (5th Cir. 1978)). Likewise, "a court may properly take judicial notice of records publicly available on the secretary of state's website." *Brecka v. Individuals, Entities, & Unincorporated Associations*, No. 24-CV-61645, 2025 WL 1151120, at *3 (S.D. Fla. Apr. 1, 2025), *report and recommendation adopted*, No. 24-61645-CIV, 2025 WL 1148442 (S.D. Fla. Apr. 17, 2025).

[2] Plaintiff acknowledges that, as a pro se litigant, she cannot represent a class, but she petitions for the appointment of class counsel to allow her to do so. Compl. at 2.

3

*Id.* at 6. Plaintiff also alleges that PDVSA officials accepted bribes to invest the employees' pension funds in what turned out to be a Ponzi scheme in the United States. *Id.*, Ex. B.1. Based on these allegations, Plaintiff asserts several claims under Venezuelan law, a claim for civil theft and conversion under Florida law, and a claim for aiding and abetting persecution under the ATS. Plaintiff served CITGO with process on December 31, 2025. Under Fed. R. Civ. P. 4(d)(3), PDVH's response to the Complaint is due January 21, 2026. As far as CITGO is aware, Plaintiff has not yet effected service of process on PDVSA.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though the court accepts well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff, it need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Federal courts are courts of limited jurisdiction. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). "They are empowered to hear only those cases . . . which have been entrusted to them by a jurisdictional grant authorized by Congress." *Id.* (citation modified). A party may challenge the court's jurisdiction through a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). When a court determines that jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Univ. of S. Ala.*, 168 F.3d at 410.

A "district court has broad discretion to stay proceedings as an incident to its power to

4

control its own docket." *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1172 n.7 (11th Cir. 2004) (citation modified); *cf. Johnson v. Bd. of Regents*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling."). In deciding whether to stay a given action, district courts "examine general factors" such as whether the stay will "simplify the issues," "reduce the burden of litigation on the parties and on the court," or "unduly prejudice or tactically disadvantage the non-moving party." *Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*, No. 3:15-CV-849-J-34PDB, 2017 WL 5256870, at *4 (M.D. Fla. Nov. 13, 2017) (citation omitted).

## ARGUMENT

### I.      The Complaint Must Be Dismissed.

#### A.  Plaintiff Fails to State a Claim Against CITGO for "Abuse of Right."

Count III, for abuse of right in violation of Venezuelan Civil Code Art. 1185, fails against CITGO as a matter of law. Article 1185 provides that "compensation is due from anyone who has caused harm to another by exceeding, in the exercise of their right, the limits set by good faith or by the purpose for which that right was granted." Venez. Civ. Code art. 1185. Even assuming Plaintiff could make out a viable claim for abuse of right against PDVSA under Venezuelan law, and assuming that claim were not barred by the applicable statute of limitations,[3] Plaintiff does not, and cannot, allege that CITGO abused any right exercised against her, and therefore her claim against CITGO must be dismissed.

The gravamen of Count III is the contention that "even if Defendants possessed a right to fire" Plaintiff, "they abused it by implementing the 'Tascón List' and 'Civil Death' strategy to

---

[3] *See* Carlos Dominguez Hernandez & Yulena Sanchez-Hoet, *Venezuela*, *in* GETTING THE DEAL THROUGH – DISPUTE RESOLUTION 2006, at 1 (2006), https://worldservicesgroup.com/ guides/dispute%20resolution%20in%20venezuela.pdf (noting that the general statute of limitations for civil actions under Venezuelan law is ten years).

5

destroy the Plaintiff's 'life project'." Compl. at 9. But the Complaint does not allege that CITGO implemented the Tascón List; it alleges that the Venezuelan government did. *Id.* at 6 ("To prevent re-employment, the State implemented the 'Tascón List,' a digitized apartheid system violating the Right to Work." (citation modified)).[4] Any "harm" that allegedly was "cause[d]" to Plaintiff thus was caused by the Venezuelan government, not by CITGO. Accordingly, Plaintiff's abuse of right claim must be dismissed with prejudice. *See Iqbal*, 556 U.S. at 682–83 (while the complaint alleged "that various other defendants" not before the Court might have violated the plaintiff's rights, the plaintiffs could not state a claim against the defendants before the Court where the "only factual allegation against [them]" did "not show, or even intimate," that those defendants were liable for the alleged misconduct); *cf. Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1337 (11th Cir. 2023) ("It is textbook tort law that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation." (citation modified)).

### B. Plaintiff's Claim for Civil Theft and Against CITGO Is Inadequately Pled and Barred by the Statute of Limitations.

Count IV of the Complaint, for civil theft and conversion of the PDVSA employee Pension Trust under Florida law, also should be dismissed with prejudice. To state a claim for civil theft under Florida law, Plaintiff must allege facts plausibly suggesting that CITGO "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [plaintiff's] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [plaintiff] of [her] right to or a benefit from the property or (b) appropriate the property to [CITGO's] own use or to the use of any person

---

[4] Count III's conclusory allegation that "Defendants" implemented the list, Compl. at 9, is not entitled to a presumption of truth and is contradicted by the Operative Complaint's more specific allegation that the Tascón List was implemented by the Venezuelan government. *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's Lond.*, 32 F.4th 1347, 1362 (11th Cir. 2022) (explaining that "specific allegations . . . govern over the general allegation[s]" in a complaint and that "taking the allegations of a complaint as true does not require [the court] to ignore specific factual details of the pleading in favor of general or conclusory allegations") (citation modified)).

not entitled to the property." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing Fla. Stat. §§ 772.11, 812.014). To state a claim for conversion of money under Florida common law, Plaintiff must allege "(1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." *IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1306 (M.D. Fla. 2013), *aff'd*, 589 F. App'x 479 (11th Cir. 2014). In addition, Plaintiff must allege "possession of the property by the wrongdoer . . . in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property." *Id.* (citation omitted). The Complaint does not allege facts plausibly suggesting that the elements of either claim are or possibly could be met as to CITGO.

Among other shortcomings,[5] the Complaint does not allege any facts suggesting that CITGO obtained, used, or deprived Plaintiff of her property in the first place. The Complaint alleges that Defendants "divert[ed]" funds from the Pension Trust "into the U.S. financial system." Compl. at 10. Again, however, Plaintiff does not allege that CITGO took the pension funds; she alleges that PDVSA officials did. *See, e.g., id.*, Ex. B.1 Summary (alleging that hedge fund manager "Francisco Illarramendi paid bribes to PDVSA officials to secure the investment of PDVSA pension funds into his Ponzi scheme"); *id.*, Ex. B.2 Summary (alleging that a PDVSA pension fund manager "received 'bribes' and 'kickbacks' to approve bond-swap transactions between PDVSA's pension funds and [the investment entities involved in the Ponzi scheme]").

Instead, the Complaint asserts that "CITGO is liable because its assets were commingled

---

[5] For instance, Plaintiff does not allege any facts plausibly suggesting that she, and not the fund administrator or trustee, has a right to possess or recover funds in the Pension Trust. *Cf. Thole v. U. S. Bank N.A*, 590 U.S. 538, 538 (2020) ("[P]articipants in a defined-benefit plan . . . possess no equitable or property interest in the plan[.]").

7

with these stolen funds to fund the Rivera contract, [a consulting agreement with a firm owned by former Congressman David Rivera,] establishing it as a beneficiary of the theft." *Id.* at 10. This theory is triply misguided. First, the conclusory allegation that PDVSA comingled its funds with CITGO's to pay Rivera is belied by the Complaint's more specific allegations that the agreement with Rivera's firm was entered into by an affiliate of CITGO, PDV USA, not CITGO. *Id.*, Ex. C Summary; Ex. C.1 Summary; *see Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."). Second, the Complaint does not allege facts plausibly suggesting that PDVSA or Illarramendi took money from Plaintiff's Pension Trust and paid it to Rivera or commingled such money with PDV USA's funds. The exhibits to the Complaint allege only that Rivera misappropriated funds paid to him by PDV USA, then laundered the funds to conceal various criminal conduct. *See* Compl. Exs. C Summary, C.1–C.3; *see also Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) (dismissing complaint where plaintiff "offers but a bare allegation, which the . . . [r]eport that forms the basis for his complaint overwhelmingly contradicts").

Even if the Complaint had adequately alleged comingling and that CITGO somehow benefited from this conduct, Plaintiff's claims still would fail, because she does not allege any facts plausibly satisfying the knowledge and intent elements of a civil theft or conversion claim. Indeed, Plaintiff does not allege *any* facts showing that CITGO knew that any funds allegedly provided by PDVSA to pay Rivera were misappropriated from a PDVSA employee Pension Trust or that CITGO specifically intended to misappropriate stolen funds. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1327 (11th Cir. 2006) (explaining that "felonious intent" requires "actual knowledge on the part of the defendant" and affirming grant of summary judgment where plaintiff could not show that Amazon used her image "with actual knowledge that its use was unauthorized"

8

(citation omitted)); *Brand v. Old Republic Nat'l Title Ins.*, 797 So. 2d 643, 646 (Fla. 3d DCA 2001) (reversing conversion findings against recipients of misappropriated funds because the plaintiff had not shown that the recipients "took receipt of the [money] knowing it had been transferred from [an] escrow account" held on behalf of third parties).

Finally, even if Plaintiff could state a claim for civil theft or conversion against CITGO, the four corners of her Complaint make clear that the claims would be barred by the applicable statutes of limitations. Claims for civil theft are subject to a five-year limitations period and "accrue when the last element constituting the cause of action occurs." *Huff Groves Tr. v. Caulkins Indiantown Citrus Co.*, 829 So. 2d 923, 924 (Fla. 4th DCA 2002) (citing Fla. Stat. § 772.17, § 95.031(1)). The statute of limitations for conversion claims is four years and "begins to run at the time of the conversion, except where the latter is fraudulently concealed." *Bove v. PBW Stock Exch., Inc.*, 382 So. 2d 450, 452–53 (Fla. 2d DCA 1980) (citing § 95.11(3)(b)).

Here, the Complaint points to a January 29, 2015 news article, a February 21, 2014 court order, and a January 14, 2011 SEC complaint documenting the alleged scheme under which PDVSA officials accepted bribes to invest pension funds in Illarramendi's hedge fund and Illarramendi's misappropriation of client funds. *See* Compl. Exs. B.1–B.3. Plaintiff's claims for civil theft and conversion thus accrued, at the latest, on January 14, 2011, when the alleged theft came to light, and the statute of limitations on the claims expired on January 14, 2016 and January 14, 2015, respectively. Because Plaintiff did not file her claims until December 2025, the claims are untimely and must be dismissed with prejudice. *See HealthPrime, Inc. v. Smith/Packett/Med-Com, LLC*, 428 F. App'x 937, 942–43 (11th Cir. 2011) (affirming dismissal of complaint because, "[o]n its face, . . . the . . . Complaint's allegations and claims of conversion . . . are time-barred"); *Huff Groves Tr.*, 829 So.2d at 925 (civil theft claims time-barred where suit brought more than five years

after theft occurred and plaintiffs "should reasonably have been on notice of the possible invasion of legal rights well before . . . the five year mark from which the suit was actually filed").

### C. Plaintiff's Claim Under the Alien Tort Statute ("ATS") Must Be Dismissed.

#### 1. The Court Lacks Jurisdiction Over Plaintiff's ATS Claim.

Count V asserts a claim against CITGO for aiding and abetting a violation of international law under the ATS. The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The statute "is jurisdictional and does not create an independent cause of action." *Romero v. Drummond Co.*, 552 F.3d 1303, 1315 (11th Cir. 2008). "Instead, it grants jurisdiction to district courts 'on the understanding that the common law [will] provide a cause of action for [a] modest number of international law violations." *Doe v. Drummond Co.*, 782 F.3d 576, 583 (11th Cir. 2015) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713 (2004)) (citation modified). For a federal court to have jurisdiction under the ATS, "the plaintiff must be (1) an alien (2) suing for a tort, which was (3) committed in violation of international law" "with the requisite definite content and acceptance among civilized nations." *Id.* (citation modified). The Supreme Court also has held that the ATS does not grant jurisdiction over claims as to which "all relevant conduct took place outside the United States" and that "even where the claims touch and concern the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." *Kiobel v. Royal Dutch Petrol. Co.*, 569 U.S. 108, 124–25 (2013); *see Baloco v. Drummond Co.*, 767 F.3d 1229, 1236 (11th Cir. 2014). Claims that do not meet these standards must be dismissed for lack of subject matter jurisdiction. *Penaloza v. Drummond Co.*, 662 F. App'x 673, 678 (11th Cir. 2016) (citing *Baloco*, 767 F.3d at 1239).

While Plaintiff is an alien and is suing for a tort, she otherwise fails to meet the required elements to afford this Court jurisdiction over her ATS claim. *First,* Plaintiff does not allege a

10

cognizable violation of international law. The ATS "is best read as having been enacted on the understanding that the common law would provide a cause of action for the modest number of international law violations with a potential for personal liability at the time [of its enactment]." *Baloco*, 767 F.3d at 1234 (citation modified). In addition to "(1) violations of safe conducts; (2) offenses against ambassadors; and (3) piracy," the only violations of the law of nations that the Eleventh Circuit has found to meet the "very limited category of cognizable claims under the ATS" are "torture and extrajudicial killing." *Id.* (citation modified); *see also Jesner v. Arab Bank, PLC*, 584 U.S. 241, 262 (2018) ("International human-rights norms prohibit acts repugnant to all civilized peoples—crimes like genocide, torture, and slavery, that make their perpetrators enem[ies] of all mankind." (citation modified)). Under *Sosa*, any other violations that might be recognized must have at least as much "definite content and acceptance among civilized nations [as] the historical paradigms familiar when [the ATS] was enacted." *Sosa*, 542 U.S. at 732. The Court has also cautioned that "whether a norm is sufficiently definite to support a cause of action should (and, indeed, inevitably must) involve an element of judgment about the practical consequences of making that cause available to litigants in the federal courts." *Id.* at 732–33.

Here, the only purported international law violations alleged by Plaintiff are that PDVSA and/or the Venezuelan government terminated her employment and blacklisted her from future employment for political reasons and then failed to pay her severance benefits to which she allegedly was entitled. Compl. at 6; *see also id.* at 8 ("The mass firing was a political purge, devoid of 'Just Cause' or due process."). The Complaint presents no evidence that there is a norm against politically motivated firing and hiring or the withholding of severance benefits—even on a mass basis as is alleged here—with as much "definite content and acceptance among civilized nations," *Sosa*, 542 U.S. at 732, as violations of safe conducts, offenses against ambassadors, or piracy had

11

at the time the ATS was enacted. Nor does the Complaint plausibly suggest that such conduct is an "act[] repugnant to all civilized peoples," *Jesner*, 584 U.S. at 262, such as torture, extrajudicial killing, slavery, or genocide. *Cf., e.g., Mendonca v. Tidewater, Inc.*, 159 F. Supp. 2d 299, 302 (E.D. La. 2001) (dismissing ATS claim based on alleged racially motivated employment discrimination because "the plaintiff can cite no solid support for his claim that the conduct complained of rises to the level recognized by the law of nations"); *De Wit v. KLM Royal Dutch Airlines*, 570 F. Supp. 613, 618 (S.D.N.Y. 1983) (claim that airline discharged plaintiff's employment, unlawfully withheld salary and wage benefits, interfered with his real estate transaction and withheld his travel documents did not support a claim under the ATS).

*Second,* Plaintiff does not assert a claim focused in the United States or any conduct relevant to her claim that occurred in the United States. To overcome the presumption against extraterritoriality, the Complaint must allege a claim with "a U.S. focus" and "adequate relevant conduct occur[ing] in the United States" "meet[ing] a minimum factual predicate." *Doe*, 782 F.3d at 592–93. Plaintiff alleges that she was fired by PDVSA, the Venezuelan state-owned oil company, that the Venezuelan government implemented a blacklist that prevented her from being hired, and that PDVSA did not pay her severance benefits to which she had a vested right under Venezuelan law. Compl. at 4–7. The focus of this claim is on Venezuela, and none of the conduct affecting Plaintiff touches or concerns the United States at all. *See, e.g., Baloco*, 767 F.3d at 1236 (focus of a claim was in Colombia where the alleged persecution occurred there); *Doe*, 782 F.3d at 589 (describing *Cardona v. Chiquita Brands Int'l*, 760 F.3d 1185, 1189 (11th Cir. 2014) as holding that allegations "that a U.S. company, from within the United States, made decisions to collaborate with and fund the paramilitary organizations that committed extrajudicial killings and war crimes in Colombia," as described in the *Cardona* dissent, did not overcome presumption).

12

While the Complaint makes bald, conclusory assertions that CITGO "forcibly repatriated employees legally present in the U.S.," Compl. at 6, and "systematically denied employment in the United States to those in the Lista Tascón or fired by PDVSA in 200[2]/2003 for political reasons," *id.* at 11, Plaintiff does not allege that she personally worked for CITGO in the United States, was forcibly repatriated, or was denied employment in the United States, nor does she allege that any of CITGO's purported conduct in the United States aided in *her* alleged persecution. *Cf.* Compl. at 6 (alleging conclusion that unnamed "CITGO executives" "coordinate[d] the purge" from Caracas). These assertions are thus not relevant to *Plaintiff's* claim. Nor does the Complaint allege any well-pleaded facts—as opposed to conclusions—showing that CITGO forcibly repatriated any employees following the purge in Venezuela or that it refused to hire any former employee who had been blacklisted. The unadorned conclusions in the Complaint do not come close to meeting *Iqbal*, much less the "minimum factual predicate" standard. *Iqbal*, 556 U.S. at 678; *Doe*, 782 F.3d at 598 (presumption not overcome where plaintiffs' "allegations of domestic conduct and connections [were] not particularly extensive or specific").

### 2. Plaintiff Does Not Adequately Allege Aiding and Abetting Liability Against CITGO.

Even if Plaintiff could allege the prerequisites for ATS jurisdiction, she does not seek to hold CITGO directly liable, but only secondarily liable for aiding and abetting conduct by PDVSA and/or the Venezuelan government. Compl. at 11. To state an aiding and abetting claim under the ATS, Plaintiff must allege "active participation," which requires allegations that "the wrongful act at the center of the claim was, in fact, committed, and the defendant gave knowing substantial assistance to the person or person who committed the wrongful act." *Doe*, 782 F.3d at 608; *accord Cabello v. Fernandez-Larias*, 402 F.3d 1148, 1158 (11th Cir. 2005).

The Complaint here is devoid of factual allegations plausibly suggesting that CITGO

13

knowingly provided substantial assistance to PDVSA or Venezuela in committing the alleged violations. To meet this standard, "the Complaint[] must contain non-conclusory factual allegations from which it may reasonably be inferred" that CITGO engaged in "sufficient acts of 'substantial' assistance" to an international law violation and that it "acted with knowledge" that its conduct "would facilitate the commission of" that violation. *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Deriv. Litig.*, 190 F. Supp. 3d 1100, 1117, 1119 (S.D. Fla. 2016). In *Chiquita*, the court found that the plaintiffs adequately alleged active participation as to certain individuals by alleging "sufficient detail respecting their direct involvement," as well as "specific facts providing a reasonable basis for inferring their knowledge" that their conduct "would increase the likelihood of" violations aimed at the regions "where plaintiffs' relatives resided." *Id.* at 1118–19. By contrast, the court found that the plaintiffs failed to state an aiding and abetting claim against other individuals as to whom the "complaints contain[ed] no" non-conclusory "allegations from which their alleged knowledge and approval" of the violations could be inferred. *Id.* at 1119.

Plaintiff's legal conclusion that CITGO "aid[ed] the persecution" of Plaintiff and other terminated employees is not accompanied by specific facts supporting a reasonable inference that CITGO provided substantial assistance to PDVSA or Venezuela or knew that any of its conduct would facilitate the commission of an international law violation. Compl. at 11. As explained above, the Complaint does not allege any facts supporting its unadorned assertions that CITGO "forcibly repatriated" fired employees to Venezuela or "systematically denied employment in the United States to those in the Lista Tascón or fired by PDVSA." Compl. at 6, 11. Likewise, the Complaint's allegation that "during 2002 and 2003," unnamed "CITGO executives established a common post at the Hotel Eurobuilding in Caracas to coordinate the purge" is merely conclusory and is not entitled to a presumption of truth and is not accompanied by any allegations from which

14

any of these individuals' alleged conduct could be attributed to CITGO. Compl. at 6; *see Iqbal*, 556 U.S. at 680–81 (holding that allegations that high-level government officials "knew of, condoned, and willfully and maliciously agreed" to engage in misconduct with other defendants were "conclusory and not entitled to be assumed true," as were allegations that one of the officials "was the 'principal architect'" of an "invidious policy" and the other "was 'instrumental' in adopting and executing it"). Plaintiff thus cannot state a claim for aiding and abetting.

### 3. Plaintiff's ATS Claim Is Time-Barred.

Finally, Plaintiff's claim under the ATS is time-barred. "Although the ATS does not contain a statute of limitations, the Eleventh Circuit applies the ten-year limitations period contained within the Torture Victim Protection Act to the ATS as both statutes share similar purposes, mechanisms, and locations within the United States Code." *Wildhaber v. EFV*, No. 17-CV-62542, 2018 WL 3069264, at *7 (S.D. Fla. June 21, 2018), *aff'd*, 745 F. App'x 141 (11th Cir. 2018) (citing *Arce v. Garcia*, 400 F.3d 1340, 1345–46 (11th Cir. 2005), *vacated on other grounds*, 434 F.3d 1254 (11th Cir. 2006); *Cabello*, 402 F.3d at 1153).

Plaintiff alleges that she was fired by PDVSA sometime between December 2002 and March 2003, yet she waited until December 2025, to file this suit, more than twenty-two years after her firing and more than twelve years after the statute of limitations expired. CITGO's alleged role in the persecution also occurred in 2002 and 2003. Compl. at 6. The "four corners of the Complaint" thus "make clear that Plaintiff's claims under the ATS accrued in [2003], thereby barring [her] claims in this lawsuit as a matter of law." *Wildhaber*, 2018 WL 3069264, at *7 (stating that the court was "bound to apply Eleventh Circuit precedent requiring the enforcement of statutes of limitation in all but the most egregious of circumstances").

15

### D. Plaintiff's Claim for Constructive Trust and Unjust Enrichment Is Inadequately Pled and Barred by the Statute of Limitations.

Count IV seeks a declaratory judgment that a constructive trust exists "over CITGO's assets in an amount equal to the stolen Pension Funds (estimated at over $14 billion for the Class)" and that "these assets cannot be liquidated to satisfy general commercial creditors." Compl. at 12. Under Florida law, a party moving for a constructive trust "must prove an independent cause of action that would support a constructive trust as a remedy, such as unjust enrichment resulting from fraud, undue influence, or breaches of fiduciary duty." *Brown v. Regan*, 368 So.3d 3, 4 (Fla. 4th DCA 2023) (citation modified). Here, Plaintiff asserts an underlying claim for unjust enrichment, but this claim fails as to CITGO for multiple reasons.[6]

*First*, the Complaint does not plausibly allege the elements of an unjust enrichment claim as a matter of law. To state a claim for unjust enrichment under Florida law, Plaintiff must allege (1) that she "has conferred a benefit on" CITGO, (2) that CITGO "voluntarily accepted and retained that benefit," and (3) that "the circumstances are such that it would be inequitable for" CITGO "to retain it without paying the value therefor." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102 (11th Cir. 2021) (citation modified). Significantly, "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." *Id.* (citation modified).

To support her claim, Plaintiff makes the bare assertion that "the funds used to maintain CITGO … were derived from the misappropriation of the Workers' Pension Trust." Compl. at 12. As explained above, the Complaint does not allege any facts plausibly suggesting that any funds derived from the Pension Trust were given to CITGO (much less all $14 billion that allegedly were

---

[6] "A party may also establish a constructive trust as an independent cause of action by showing: (1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment." *Brown*, 368 So.3d at 4 (citation modified). The Complaint does not and cannot make any such allegations against CITGO, so Plaintiff presumably is seeking to obtain a constructive trust as a remedy for her unjust enrichment claim.

16

stolen from the trust). *See supra* Part I.B. The Complaint thus does not plausibly allege that Plaintiff conferred any benefit on CITGO or that CITGO accepted or retained any benefit. *See, e.g., OJ Com., LLC v. Ashley Furniture Indus.*, 817 F. App'x 686, 692 (11th Cir. 2020). As also explained above, the Complaint does not allege any facts plausibly suggesting that CITGO knew that any funds provided to it were derived from the Pension Trust and thus does not plausibly allege that CITGO "knowingly and voluntarily" accepted any benefit conferred on it by Plaintiff. *See Flatirons Bank v. Alan W. Steinberg Ltd.*, 233 So. 3d 1207, 1212 (Fla. 3d DCA 2017) (affirming summary judgment on unjust enrichment claim where the defendant "had no knowledge that the sums it received … were tainted in any way, or, for that matter, originated from [the plaintiff]").

Moreover, even if the Complaint *did* plausibly allege that funds derived from the Pension Trust were given to CITGO and that CITGO accepted and retained those funds, Plaintiff's unjust enrichment claim still would fail because Plaintiff cannot allege that she directly conferred a benefit on CITGO. "A benefit that a defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment." *Century Sr. Servs. v. Consumer Health Ben. Ass'n*, 770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011). Here, any benefit that might have been bestowed on CITGO (which, again, has not been alleged) came from PDVSA. *See Marrache*, 17 F.4th at 1102 (affirming dismissal where the plaintiff alleged "at most" that he "conferred an indirect benefit" on the defendant by purchasing liquor manufactured by the defendant); *Century Sr. Servs.*, 770 F. Supp. 2d at 1267 (dismissing unjust enrichment claim where plaintiff alleged only "that the benefits" conferred on the defendant "were 'derived' from [the plaintiff's] sales").

**Second,** Plaintiff's unjust enrichment claim fails because it is based on the same factual predicates as her legal causes of action for civil theft and conversion. And where a plaintiff's "unjust enrichment claim relies upon the same factual predicates as [her] legal causes of action, it is

17

not a true alternative theory of relief but rather is duplicative of those causes of action and warrants dismissal." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) (citation omitted).

*Finally,* Plaintiff's unjust enrichment claim is time-barred. Claims for unjust enrichment are subject to a four-year statute of limitations. *Flatirons*, 233 So.3d at 1213 n.11 (citing § 95.11). The statute "begins to run at the time the alleged benefit is conferred and received by the defendant," and "the delayed discovery doctrine is inapplicable to extend the limitations period for unjust enrichment claims." *Id.* Here, the basis for Plaintiff's unjust enrichment claim against CITGO is the conclusory allegation that PDVSA commingled pension funds with assets belonging to CITGO affiliate PDV USA "to fund the Rivera contract." Compl. at 10. The Complaint alleges that the Rivera contract was signed on March 21, 2017, and the exhibit linked to in the Complaint alleges that PDV USA paid Rivera $15 million between that date and April 18, 2017 before discovering that Rivera's firm was not performing the work PDV USA had contracted with it to perform. Compl. Ex. C Summary; *see* Compl. ¶¶ 5–6, 32–37, *PDV USA, Inc. v. Interamerican Consulting, Inc.*, No. 20-cv-03699 (S.D.N.Y. filed May 13, 2020). Plaintiff's claim thus accrued, at the latest, on April 18, 2017, more than eight years before she brought her suit. As a result, her claim is time-barred and should be dismissed with prejudice. *See, e.g., Koski*, 347 F. Supp. 3d at 1195, 1199 (dismissing time-barred unjust enrichment claim with prejudice).

## II. Alternatively, the Court Should Stay the Case Until After PDVSA Has Been Served and Its Sovereign Immunity Objections Resolved.

In the alternative, if the Court does not dismiss Plaintiff's claims against CITGO, it should stay the case until after PDVSA has been properly served with process under the FSIA and any sovereign immunity–related objections have been resolved. As explained above, in determining whether a stay is warranted, courts consider whether a stay would simplify the issues, reduce the burden of litigation on the parties and on the court, or unduly prejudice or tactically disadvantage

the non-moving party. *See Lanard Toys*, 2017 WL 5256870, at \*4; *see also LS Energia Inc. v. Corporacion Electrica Nacional S.A.*, No. 21-21642-CV, 2023 WL 7490778, at \*3 (S.D. Fla. Mar. 21, 2023) (staying case until defendant Venezuela was properly served under the FSIA).

To begin, a stay would promote judicial economy and efficiency for the Court and all parties involved. Plaintiff's claim against CITGO is wholly based on her claims against PDVSA, and this case should not, and cannot practically, proceed in PDVSA's absence. Plaintiff's allegations focus primarily on PDVSA's and Venezuelan government's conduct within Venezuela. *See* Compl. at 5–7. CITGO does not know or have access to most of the facts, documents, or circumstances at the heart of the Plaintiff's claims and thus not in a position to obtain necessary discovery or defend against Plaintiffs' claims. Nor is CITGO well-placed to submit affidavits or other evidence of Venezuelan law. *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."). Once PDVSA is served, it is entitled to have the issue of its sovereign immunity determined (including on appeal) before it can be required to litigate the merits. *See Howe v. City of Enterprise*, 861 F.3d 1300, 1302 (11th Cir. 2017) (per curiam). It would make little sense to conduct partial discovery, summary judgment, or other proceedings without PDVSA, only to do it all again once the merits against PDVSA begin.

Moreover, a stay would cause no prejudice or tactical disadvantage to Plaintiff. For the reasons explained above, this case will be effectively unable to proceed in PDVSA's absence. It may take a long time before Plaintiff can satisfy the FSIA's hierarchical methods for trying to serve process on PDVSA, and after that PDVSA likely will move to dismiss on sovereign immunity grounds. The Complaint appears to incorrectly assume that CITGO's assets are being sold to pay creditors of Venezuela and PDVSA in *Crystallex v. Bolivarian Republic of Venezuela*, an execution

19

sale proceeding currently taking place in the United States District Court for the District of Delaware. *See* No. MC 17-151-LPS, 2025 WL 3281353, at *3 (D. Del. Nov. 25, 2025) (adopting Special Master's Updated Final Recommendation for sale). But CITGO's assets are not being sold. The execution sale is for the stock owned by PDVSA in its subsidiary, PDV Holding, Inc., an indirect parent of CITGO. *Id.* Even if Plaintiff obtained a constructive trust over CITGO's assets, which is unlikely, that would not stop the sale process or distribution of proceeds to creditors in *Crystallex*. Because those creditors are not creditors of CITGO, a constructive trust over CITGO's assets would not have any impact on the asset being sold in *Crystallex*.

## CONCLUSION

CITGO respectfully requests that Plaintiff's ATS claim be dismissed for lack of subject matter jurisdiction and her remaining claims against CITGO be dismissed with prejudice.

20

Date: January 21, 2026

Respectfully submitted,

By: _____

GREG J. WEINTRAUB
Florida Bar No. 75741
LASH GOLDBERG FINEBERG LLP
Miami Tower, Suite 1200
100 Southeast Second Street
Miami, FL 33131
Tel.: 305-347-4040
gweintraub@lashgoldberg.com

Nathan P. Eimer
(*pro hac vice* forthcoming)
Daniel D. Birk
(*pro hac vice* forthcoming)
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Tel.: 312-660-7600
neimer@eimerstahl.com
dbirk@eimerstahl.com

*Counsel for Defendant*
*CITGO Petroleum Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 21, 2026, I conventionally filed the foregoing document with the Clerk of the Court. I also certify that the foregoing document is being served this day via U.S Mail on Plaintiff Ana Mendez (pseudonym) at the address provided in the Summons.

_____
Greg J. Weintraub, Fla. Bar No. 75741

21