**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-25796-Shaw-Wilder

YSIDRA LOPENZA,

      *Plaintiff*,

  v.

PETRÓLEOS DE VENEZUELA, S.A., *et al.*,

      *Defendants*.

_____/

### DEFENDANT CITGO PETROLEUM CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO STAY

Plaintiff's Opposition, ECF 27, to CITGO's motion to dismiss, ECF 9, confirms that the claims against CITGO should be dismissed.[1] Rather than address the deficiencies CITGO identified, the Opposition shifts theories, relies on allegations not pleaded in the Complaint, and invokes procedural developments that do not supply the missing facts plausibly connecting CITGO to the alleged harms. The Complaint utterly fails to state a viable claim against CITGO for abuse of right, civil theft/conversion, aiding and abetting under the Alien Tort Statute ("ATS"), or unjust enrichment/constructive trust.

The Court should dismiss the complaint or, in the alternative, stay this action pending resolution of service and sovereign-immunity issues concerning the foreign-state defendants. Either way, jurisdictional discovery is not warranted: CITGO does not challenge personal jurisdiction, and the Court's lack of subject-matter jurisdiction over the ATS claim is clear as a matter of law.

---

[1] CITGO's citations to all the documents from the docket in this matter, including its original Motion to Dismiss (ECF 9) and Plaintiff's Opposition (ECF 27), use the page numbers stamped at the top of the page by the Court's electronic filing system, not the page numbers at the bottom.

**ARGUMENT**

I.    **The Opposition Does Not Respond to, and thus Concedes, Arguments Requiring Dismissal of Each Claim.**

The Opposition does not respond to, and thus concedes, CITGO's arguments that the Complaint fails to state a claim against CITGO for (1) abuse of right under Venezuelan law (Count III) because it alleges that she was fired and blacklisted by PDVSA and the Venezuelan government, not by CITGO, ECF 9 at 11–12; (2) civil theft or conversion under Florida law (Count IV) because it alleges no facts plausibly suggesting that CITGO obtained, used, or deprived Plaintiff of property, or showing the knowledge and intent elements of those torts, *id.* at 12–15; and (3) constructive trust and unjust enrichment (Count VI) because the Complaint alleges no facts plausibly suggesting that Plaintiff directly conferred a benefit on CITGO or that CITGO knowingly and voluntarily accepted one, and because the predicate unjust enrichment claim rests on the same allegations as her inadequate civil theft and conversion claims, *id.* at 22–24. *See Jones v. Bank of Am.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (citation modified).

The Opposition also fails to respond to, and thus concedes, CITGO's argument that the Court lacks jurisdiction over Plaintiff's ATS claim for aiding and abetting persecution (Count V) because the alleged conduct of PDVSA and the Venezuelan government—politically motivated firing, blacklisting, and withholding of severance benefits—does not violate any law-of-nations norm "with the requisite definite content and acceptance among civilized nations." ECF 9 at 16 (quoting *Doe v. Drummond Co.*, 782 F.3d 576, 583 (11th Cir. 2015)) (citation modified).[2] And the

---

[2] The proposed brief attached to Plaintiff's unopposed motion for an extension of time contained a section (not included in the filed Opposition) disputing CITGO's alternative argument that the Court lacks jurisdiction over the ATS claim because the Complaint does not overcome the presumption against extraterritoriality. *See* ECF 19 at 6–7; *see also* ECF 9 at 18–19 (arguing that "Plaintiff does not assert a claim focused in the United States or any conduct relevant to her claim

Opposition clarifies that Plaintiff does not seek to hold CITGO liable for PDVSA's conduct under an alter ego or other veil-piercing theory. ECF 27 at 5. These concessions require dismissal of Plaintiff's claims against CITGO. *See, e.g.*, *Gent Row, LLC v. Truist Fin. Corp.*, No. 22-80684-CIV, 2022 WL 3682172, at *2 (S.D. Fla. June 27, 2022) ("Plaintiff has abandoned these claims by failing to defend them in opposition to the Motion to Dismiss.").

II.     **The Opposition Relies on Allegations Not Contained in the Complaint, Which Are Inadequate in any Event.**

The Opposition's only attempt to save Plaintiff's claims for conversion, civil theft, and unjust enrichment is to incorrectly assert that "the Verified Complaint pleads that CITGO Petroleum Corporation directly executed payments in 2017 from its own accounts under a $50 million contract with Interamerican Consulting, Inc. (*see* Verified Complaint, ECF No. 1, ¶¶ __ . . .)." ECF 27 at 5. Tellingly, the citation is left blank. No such allegation appears in the Complaint. *See Omega Psi Phi Fraternity, Inc. v. HCE Grp. of Cos., Inc.*, No. 11-CV-80479, 2011 WL 13228098, at *3 (S.D. Fla. Oct. 19, 2011) ("In the face of a motion to dismiss, the Court may only consider the facts alleged in the complaint itself, and the new facts in Plaintiff's opposition may not be considered."). Instead, as CITGO explained in its opening brief, the Complaint's "conclusory allegation that PDVSA commingled its funds with CITGO's to pay [Interamerican Consulting principal David Rivera] is belied by the Complaint's more specific allegations that the agreement with Rivera's

---

that occurred in the United States."). But neither the proposed brief nor the Opposition disputes that politically motivated firings and the refusal to pay supposedly vested pension benefits do not rise anywhere near to the level of "acts repugnant to all civilized peoples—crimes like genocide, torture, and slavery—that make their perpetrators enem[ies] of all mankind." ECF 9 at 17 (quoting *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 262 (2018) (citation modified)). Accordingly, the Court lacks jurisdiction regardless of whether the presumption against extraterritoriality is satisfied (which it is not for the reasons explained below and in CITGO's opening brief).

firm was entered into by an affiliate of CITGO, PDV USA, not CITGO." ECF 9 at 14.[3]

Even if Plaintiff could allege that CITGO "directly" paid Rivera "from its own accounts," that would not suffice to hold CITGO liable for civil theft, conversion, or unjust enrichment. The Complaint's theory is that Francisco Illaramendi, a hedge fund manager in Connecticut, bribed PDVSA officials to invest funds from the PDVSA Pension Trust into Illaramendi's hedge fund, which turned out to be a Ponzi scheme. *See* ECF 9 at 13, 15 (citing ECF 1 Exs. B.1–B.3). The Complaint alleges no facts showing that the invested funds belonged to her rather than the PDVSA Pension Trust, or that she—allegedly a former employee fired in 2002 or 2003, years before the funds were allegedly invested with Illaramendi—has standing to recover them on the Trust's behalf. *See id.* at 13 & n.5. Nor does the Complaint allege any non-conclusory facts plausibly connecting Illaramendi, his Ponzi scheme (for which he pleaded guilty in 2011, ECF 1 Ex. B.1), or the invested money to the contract with Rivera, a former Florida congressman and lobbyist, in 2017. Indeed, the Complaint alleges that *PDVSA* commingled *its* funds with PDV USA's to pay Rivera, without any facts suggesting that PDVSA obtained this money from Illaramendi or separately took it from the Pension Trust. *See id.* at 14. And the Complaint alleges no facts plausibly

---

[3] The proposed brief appended as Exhibit A to Plaintiff's unopposed motion for extension of time asserts that CITGO should be held liable for PDV USA's conduct under a "triangular piercing" theory. ECF 19 at 8. As noted above, the Opposition brief Plaintiff ultimately filed clarifies that Plaintiff is not seeking to hold CITGO liable under a veil-piercing theory. *See supra* pp. 2–3. Nor does the Complaint allege—or even attempt to allege—facts sufficient to pierce CITGO's corporate veil under the law of its state of incorporation (Delaware) or any other applicable law. *See Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood*, 752 A.2d 1175, 1183–84 (Del. Ch. 1999) (piercing the corporate veil is "a difficult task" requiring the plaintiff to demonstrate *both* "exclusive domination and control" of the subsidiary by the parent, *and* that "the corporate structure cause[d] fraud or similar injustice" (internal quotation marks omitted)); *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 710–16 (Del. Ch. 2021) (When a plaintiff seeks to engage in reverse veil-piercing (defined as "the imposition of liability on a business organization for the liabilities of its owners"), a plaintiff must further demonstrate that disregarding corporate separateness is equitable in light of the interests of creditors, third parties, and public policy).

suggesting that PDV USA or CITGO knew that some of the money used to pay Rivera was mis-appropriated, or that either intended to use misappropriated funds. *See id.* at 14–15. Again, the Opposition does not respond to any of CITGO's arguments on these points.

### III.   Plaintiff's ATS Allegations Do Not Overcome the Presumption Against Extraterritoriality or Plausibly Suggest Aiding and Abetting Liability.

As explained above, *supra* p. 2, the Opposition does not respond to CITGO's argument that the Complaint fails to allege conduct in violation of well-established international law norms necessary to give the Court jurisdiction over Plaintiff's claim for aiding and abetting persecution under the ATS. *See* ECF 9 at 16–19. The proposed brief attached to Plaintiff's unopposed motion for an extension of time (but not the filed Opposition) does, however, respond to CITGO's second jurisdictional argument: that the Complaint's allegations do not overcome the presumption against extraterritoriality given that "[t]he focus of [Plaintiff's] claim is on Venezuela, and none of the conduct affecting Plaintiff touches or concerns the United States at all," ECF 9 at 18. Specifically, Plaintiff incorrectly contends that the Complaint sufficiently ties her claim to the United States by alleging that "CITGO corporate officers forcibly repatriated Venezuelan employees who were legally present and working at U.S. facilities … back to Venezuela under the explicit threat of visa revocation, knowing these individuals would face persecution upon arrival." ECF 19 at 6–7.

These allegations are conclusory and unsupported by any well-pleaded facts, but they would not help Plaintiff even if they were well-pleaded. None of those allegations relates to Plaintiff or her claims. To overcome the presumption against extraterritoriality, a complaint must allege a claim with "a U.S. focus" and "adequate relevant conduct occur[ing] within the United States" "meet[ing] a minimum factual predicate." *Doe*, 782 F.3d at 592–93 (internal quotation marks omitted). As CITGO explained in its opening brief, Plaintiff alleges that she was fired by PDVSA, the Venezuelan state-owned oil company, that the Venezuelan government implemented

a blacklist that prevented her from being hired, and that PDVSA did not pay her severance benefits to which she had a vested right under Venezuelan law. ECF 9 at 18. All this conduct occurred in, and is focused on, Venezuela. *See id.* (citing *Baloco v. Drummond Co.*, 767 F.3d 1229, 1236 (11th Cir. 2014), which held that the focus of a claim was in Colombia where the alleged persecution occurred). And even if the Complaint had plausibly alleged that CITGO "forcibly repatriated" other, unnamed persons to Venezuela, knowing they would face persecution, Plaintiff does not allege that she was one of those employees or that CITGO's alleged conduct towards these employees has any "relevant," *Doe*, 782 F.3d at 592, connection to what happened to *her*.

Even if the Court did have jurisdiction under the ATS, Plaintiff still would fail to allege a claim for aiding and abetting liability against CITGO. As explained in CITGO's opening brief, the Complaint alleges no facts plausibly suggesting that CITGO gave knowing substantial assistance to the persons or entities that allegedly persecuted Plaintiff. ECF 9 at 19–21 (explaining that the only allegation attempting to tie CITGO to Plaintiff's firing is the conclusory assertion that unnamed CITGO executives coordinated the firings of PDVSA employees). The Opposition does not respond to this argument and thereby concedes it. *See Jones*, 564 F. App'x at 434.

## IV.   Plaintiff Does Not Plausibly Plead Application of the Discovery Rule, the Continuing-Tort Doctrine, or Fraudulent Concealment.

The Opposition does not cure the statute-of-limitations problem. By Plaintiff's own admission, her claims arise from events occurring decades ago. *See* ECF 1 at 6 (alleging that her firing and blacklisting occurred sometime between 2002–2003); *id.* Exs. B.1–B.3 (Illaramendi's alleged misappropriation of PDVSA funds came to light in 2011). Plaintiff invokes "contested questions of fact," including "the date of accrual," ECF 27 at 3, but labels do not substitute for well-pleaded facts. *Appleby v. Knauf Gips KG*, No. 22-CIV-61411, 2023 WL 3844770, at *1 (S.D. Fla. June 5, 2023) ("If Plaintiffs intend to rely on a discovery rule, they must include factual allegations relating

6

to when they discovered their claims and their diligence, because a plaintiff must plead sufficient facts to show the time of discovery and to support the plaintiff's diligence.") (citation modified).

Nor does the Opposition plausibly allege a continuing wrongful act by CITGO that could implicate "the continuing-tort doctrine." ECF 27 at 3. The Rivera contract has nothing to do with the abuse-of-right or ATS claims, and even as to the other claims, the payments under the contract preceded this suit by eight years. Under such circumstances, the continuing tort doctrine does not apply. *See, e.g.*, *Marlborough Holdings Grp. Ltd. v. Pliske Marine, Inc.*, No. 08-62075-CIV, 2011 WL 13322673, at *7 (S.D. Fla. Mar. 18, 2011) ("[T]he 'continuing tort' doctrine does not apply" where defendant "was not engaged in continuing tortious acts. [Plaintiff] alleges distinct torts altogether[.]"), *aff'd sub nom. Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899 (11th Cir. 2013).

The Opposition also invokes fraudulent concealment, ECF 27 at 3, 6, but "fraudulent concealment must be pled in order to toll the statute of limitations in non-fraud cases." *Sullenberger v. City of Coral Gables*, No. 22-CV-21830, 2026 WL 1041962, at *3 (S.D. Fla. Apr. 17, 2026) (refusing to toll statute of limitations because "our Plaintiff never pled fraudulent concealment in any of his complaints"). Plaintiff's fraudulent-concealment argument fails because she never pleaded fraudulent concealment in her Complaint, much less satisfied the "heightened pleading requirements" of Federal Rule of Civil Procedure 9(b). *Gomez v. SunTrust Mortg., Inc.*, No. 08-23454-CIV, 2009 WL 10667427, at *1–2 (S.D. Fla. June 15, 2009) (refusing to toll statute of limitations and dismissing complaint where Plaintiff's "bald[] alleg[ations]" of fraudulent concealment failed to satisfy Rule 9(b)).

Where the Complaint shows on its face that the claims accrued long ago and Plaintiff offers only conclusory assertions of discovery-rule or equitable-tolling application, dismissal is

appropriate. *See, e.g.*, *Jane Doe No. 8 v. Epstein*, No. 09-80802-CIV, 2009 WL 3878067, at *5 (S.D. Fla. Nov. 18, 2009) (dismissing complaint because it "reveals no allegations which implicate the doctrine of delayed discovery, or would avoid the running of the limitations period"); *Liste v. Cedar Fin.*, No. 8:13-CV-3001-T-30AEP, 2014 WL 4059881, at *2 (M.D. Fla. Aug. 14, 2014) (dismissing complaint where plaintiff "has failed to state facts that would support an argument for tolling of the relevant limitations periods"). The case cited by Plaintiff is not to the contrary. *See Foudy v. Indian River Cnty. Sheriff's Off.*, 845 F.3d 1117, 1120 (11th Cir. 2017) (affirming grant of motion to dismiss based on statute of limitations).

## V.   Jurisdictional Discovery Is Not Warranted.

Plaintiff alternatively requests jurisdictional discovery from CITGO. ECF 27 at 7–8. But CITGO does not contest personal jurisdiction; it challenges only subject-matter jurisdiction over the ATS claim, which is clear as a matter of law. *See* ECF 9 at 16. And none of the topics on which Plaintiff seeks discovery—corporate organizational charts and governance documents, FARA filings, and documents reflecting the authorization and disbursement of the 2017 Rivera contract payments, ECF 27 at 8—has anything to do with her ATS claim. Plaintiff's request is merely a fishing expedition to dig up fuel for her conspiracy theories. *See Cadile v. Miranda*, No. 25-21964-CIV, 2025 WL 2675790, at *3 (S.D. Fla. June 23, 2025) ("Jurisdictional discovery should not enable a fishing expedition") (citation modified).

Nor would it be appropriate to allow Plaintiff to seek "jurisdictional" discovery to repair her deficient complaint or to search for facts that might support a viable claim. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (stating that "facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins" and that discovery "is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim" (citation

8

modified)). Where, as here, the Complaint fails on legal grounds and lacks nonconclusory allegations linking CITGO to actionable misconduct, jurisdictional discovery would impose burden without curing the dispositive defects. *Watson v. Kingdom of Saudi Arabia*, 159 F.4th 1234, 1272 (11th Cir. 2025) ("Because the Amended Complaint fails to state a claim . . . as a matter of law, the district court also correctly denied the Plaintiffs' Motion for Jurisdictional Discovery.").

## VI.    If the Court Denies the Motion to Dismiss, the Court Should Stay This Action.

Plaintiff is wrong that the requested stay should be denied because she claims to have served PDVSA and obtained a clerk's notice of default. ECF 27 at 6–7. Before entering judgment against a foreign state or its agency or instrumentality, the Court has an independent obligation to satisfy itself that an exception to immunity under the Foreign Sovereign Immunities Act ("FSIA") applies. *See Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312 (11th Cir. 2009) (reversing denial of motion to dismiss). That inquiry is jurisdictional, *id.*, and cannot be bypassed by default or made to depend on whether CITGO has standing to raise it. *See Howard v. United States*, 374 F.3d 1068, 1071 (11th Cir. 2004) ("[A] jurisdictional defect cannot be waived or procedurally defaulted[.]"); *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 n.20 (1983) ("Subject matter jurisdiction [under FSIA] turns on the existence of an exception to foreign sovereign immunity. Accordingly, even if the foreign state does not enter an appearance to assert an immunity defense, a District Court still must determine that immunity is unavailable[.]" (citation modified)); *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 290–93 (2d Cir. 2011) ("The court may consider the issue [of FSIA immunity] once it is suggested by *any* party—or, for that matter, non-party— even if there is no reason to confer a special right of 'third-party standing' on that party," because FSIA applies "regardless of whether the foreign sovereign enters an appearance").

Moreover, PDVSA may appear for the limited purpose of contesting whether service was properly effected under the FSIA, an issue that goes directly to the Court's authority to proceed.

*See Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 864 (11th Cir. 2007) ("[A] defendant in default still can challenge the validity of service of process or contest the court's exercise of personal jurisdiction over him." (footnote omitted)). Plaintiff's claim that the FSIA allows her to serve a foreign sovereign instrumentality at an apartment complex in Florida is, to say the least, an unusual contention. *See* 28 U.S.C. § 1608(b). And even if service were proper, PDVSA may move to vacate the default—a commonly granted remedy in cases against foreign states and their instrumentalities. *See, e.g.*, *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 338 F.R.D. 664, 665 (S.D. Fla. 2021) (granting motion of instrumentality to vacate default).

If the Court denies CITGO's motion to dismiss, a stay remains warranted to avoid unnecessary merits litigation while these threshold FSIA service and immunity issues concerning PDVSA are resolved. *See* ECF 9 at 24–26. A stay would also spare CITGO from litigating a case Plaintiff herself frames around PDVSA's alleged conduct before the Court determines whether and how the foreign-state defendant is properly before it. As explained in CITGO's opening brief, Plaintiff's claim against CITGO depends entirely on her claims against PDVSA, and this case cannot practically proceed in PDVSA's absence. ECF 9 at 25.

**CONCLUSION**

For the foregoing reasons and those set forth in CITGO's opening memorandum, CITGO respectfully requests that the Court dismiss Plaintiff's ATS claim for lack of subject-matter jurisdiction and dismiss the remaining claims against CITGO with prejudice for failure to state a claim. In the alternative, CITGO requests that the Court stay this action pending resolution of service and sovereign-immunity issues concerning the foreign-state defendants. Either way, Plaintiff's request for jurisdictional discovery should be denied.

Date: May 19, 2026

Respectfully submitted,

By: /s/_Greg J. Weintraub
GREG J. WEINTRAUB
Florida Bar No. 75741
LASH GOLDBERG FINEBERG LLP
Miami Tower, Suite 1200
100 Southeast Second Street
Miami, FL 33131
Tel.: 305-347-4040
gweintraub@lashgoldberg.com

Nathan P. Eimer (*pro hac vice*)
Daniel D. Birk (*pro hac vice*)
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Tel.: 312-660-7600
neimer@eimerstahl.com
dbirk@eimerstahl.com

*Counsel for Defendant*
*CITGO Petroleum Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 19, 2026, I filed the foregoing document with the Clerk of the Court via CM/ECF. I also certify that the foregoing document is being served this day via U.S Mail on Plaintiff Ysidra Lopenza at the address provided in the Summons.

/s/_Greg J. Weintraub
GREG J. WEINTRAUB
Florida Bar No. 75741

11